Mark W. Lerner (mlerner@kasowitz.com)
Joshua D. Fulop (jfulop@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax:  (212) 506-1800

*Attorneys for Defendants Quinn, Emanuel,*
*Urquhart & Sullivan, LLP, Peter Calamari,*
*and David Eskanos*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICHOLAS MONDELO,<br><br>Plaintiff,<br><br>v.<br><br>QUINN, EMANUEL, URQUHART & SULLIVAN, LLP, PETER CALAMARI, AND DAVID ESKANOS,<br><br>Defendants. | Civil Action No.:<br>1:21-cv-02512 (CM) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR A STAY OF DISCOVERY**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

      A.     The Firm Hires Plaintiff................................................................................... 3

      B.     Plaintiff Alleges a Single Instance of Discriminatory Animus by Eskanos .......... 3

      C.     Plaintiff's Employment at the Firm between October 2015 and March 2018 ....... 4

      D.     Calamari Leaves His Post as Managing Partner of the New York Office............. 5

      E.     Plaintiff Has No Direct Communication with Eskanos Post-March 2018 ............ 5

ARGUMENT ........................................................................................................................... 7

I.      LEGAL STANDARDS ................................................................................................. 7

II.     PLAINTIFF FAILS TO STATE A HOSTILE WORK ENVIRONMENT CLAIM.......... 8

      A.     Plaintiff's NYSHRL and NYCHRL Claims Fail Because They Are Untimely ..... 8

      B.     Plaintiff's Section 1981 and NYSHRL Claims Fail Because They Do Not
           Plead a Severe and Pervasive Hostile Work Environment ..................................... 9

III.    PLAINTIFF FAILS TO STATE A DISCRIMINATION CLAIM.................................. 13

IV.    PLAINTIFFS' RETALIATION CLAIMS FAIL TO STATE A CLAIM........................ 19

V.     PLAINTIFF'S AIDING AND ABETTING CLAIMS MUST BE DISMISSED............. 21

VI.    DEFENDANTS' MOTION TO STAY DISCOVERY SHOULD BE GRANTED ........ 23

CONCLUSION....................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Alexander v. New York City Dep't of Educ.,
No. 19-CV-7023, 2020 WL 7027509 (S.D.N.Y. Nov. 30, 2020)............................................12

Alshami v. The City Univ. of New York,
No. 160183/2019, 2021 WL 2226424 (N.Y. Sup. Ct. June 02, 2021)....................................21

Anderson v. Conboy,
156 F.3d 167 (2d Cir. 1998)....................................................................................................17

Anderson v. Davis Polk & Wardwell LLP,
850 F. Supp. 2d 392 (S.D.N.Y. 2012)....................................................................................15

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..................................................................................................................7

Azeez v. Ramaiah,
No. 14 CIV. 5623, 2015 WL 1637871 (S.D.N.Y. Apr. 9, 2015)......................................20, 21

Bakeer v. Nippon Cargo Airlines, Co.,
No. 09 CV 3374, 2011 WL 3625103 (E.D.N.Y. July 25, 2011) .............................................19

Bennett v. Watson Wyatt & Co.,
136 F. Supp. 2d 236 (S.D.N.Y. 2001).....................................................................................14

Bermudez v. City of New York,
783 F. Supp. 2d 560 (S.D.N.Y. 2011)...........................................................................8, 9, 13, 19

Bertuzzi v. Copiague Union Free Sch. Dist.,
No. CV-17-4256, 2020 WL 5899949 (E.D.N.Y. Mar. 9, 2020)............................................20

Cardwell v. Davis Polk & Wardwell LLP,
No. 1:19-CV-10256, 2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020)......................................13

Carrington v. New York City Human Res. Admin.,
No. 19 CIV. 10301, 2020 WL 2410503 (S.D.N.Y. May 12, 2020)..........................................8

Carter v. New Venture Gear, Inc.,
310 F. App'x 454 (2d Cir. 2009) ..............................................................................................9

Comcast Corp. v. N.A. of African Am.-Owned Media,
140 S. Ct. 1009 (2020)............................................................................................................14

Conklin v. Cty. of Suffolk,
    859 F. Supp. 2d 415 (E.D.N.Y. 2012) ...................................................................23

Cummings v. City of New York,
    No. 19-CV-7723, 2021 WL 1163654 (S.D.N.Y. Mar. 26, 2021) ............................17

Davis-Bell v. Columbia Univ.,
    851 F. Supp. 2d 650 (S.D.N.Y. 2012).............................................................21, 22

De La Peña v. Metro. Life Ins. Co.,
    953 F. Supp. 2d 393 (E.D.N.Y. 2013) ............................................................11, 15

Demoret v. Zegarelli,
    451 F.3d 140 (2d Cir. 2006)...................................................................................12

Doe v. New York Univ.,
    438 F. Supp. 3d 172 (S.D.N.Y. 2020) ...................................................................16

Downey v. Adloox Inc.,
    238 F. Supp. 3d 514 (S.D.N.Y. 2017).......................................................................7

Eng v. New York City Police Dep't,
    No. 95 CIV. 5845, 1996 WL 521421 (S.D.N.Y. Sept. 12, 1996)...........................18

Fattoruso v. Hilton Grand Vacations Co., LLC,
    525 Fed. App'x 26 (2d Cir. 2013)....................................................................19, 23

Fincher v. Depository Tr. and Clearing Corp.,
    604 F.3d 712 (2d Cir. 2010)...................................................................................11

Fleming v. MaxMara USA, Inc.,
    371 Fed App'x. 115 (2d Cir. 2010).........................................................................12

Fouche v. St. Charles Hosp.,
    64 F. Supp. 3d 452 (E.D.N.Y. 2014) ......................................................................21

Gandler v. Nazarov,
    No. 94 CIV. 2272, 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994)............................24

Haggood v. Rubin & Rothman, LLC,
    No. 14-CV-34L, 2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014) ..............................8

Hall v. Jewish Home & Hosp.,
    No. 16 CIV. 9881, 2017 WL 5665660 (S.D.N.Y. Nov. 15, 2017) .........................11

Harris v. Forklift Sys., Inc.,
    510 U.S. 17 (1993)....................................................................................................9

Heskin v. Insite Advert., Inc.,
     No. 03 CIV.2508, 2005 WL 407646 (S.D.N.Y. Feb. 22, 2005)...............................................22

Hollingsworth v. Theat. Teamsters Union Local 817 IBT,
     No. 16-CV-4700, 2020 WL 2219212 (E.D.N.Y. May 7, 2020) ...............................................16

Isbell v. City of New York,
     316 F. Supp. 3d 571 (S.D.N.Y. 2018).....................................................................................12

Jenkins v. Arcade Bldg. Maint.,
     44 F. Supp. 2d 524 (S.D.N.Y. 1999)........................................................................................20

Johnson v. City of New York,
     No. 17-CV-75852019 WL 4468442 (E.D.N.Y. Sep. 18. 2019)  ............................................14

Lebowitz v. New York City Dep't of Educ.,
     407 F. Supp. 3d 158 (E.D.N.Y. 2017) ...............................................................................19, 21

Lee v. Overseas Shipholding Grp., Inc.,
     No. 00 CIV. 9682, 2001 WL 849747 (S.D.N.Y. July 30, 2001) ...............................................9

Lenart v. Coach Inc.,
     131 F. Supp. 3d 61 (S.D.N.Y. 2015).......................................................................................11

Littlejohn v. City of New York,
     795 F.3d 297 (2d Cir 2015).....................................................................................................12

Luka v. Bard Coll.,
     263 F. Supp. 3d 478 (S.D.N.Y. 2017)................................................................................14, 15

Mackenzie Architects, PC v. VLG Real Estate Dev., LLC,
     No. 1:15-CV-1105, 2016 WL 4703736 (N.D.N.Y. Sept. 8, 2016).........................................18

Martin v. City Univ. of New York,
     No. 17 Civ. 6791, 2018 WL 6510805 (S.D.N.Y. Dec. 11, 2018)...........................................15

McGullam v. Cedar Graphics, Inc.,
     609 F.3d 70 (2d Cir. 2010).....................................................................................................10

McHenry v. Fox News Network, LLC,
     No. 19 CIV. 11294, 2020 WL 7480622 (S.D.N.Y. Dec. 18, 2020)...................................21, 22

Moore v. Verizon,
     No. 13-CV-6467, 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016)....................................12, 13, 15

Nadesan v. Citizens Fin. Grp.,
     673 F. App'x 47 (2d Cir. 2016) .............................................................................................17

Nat'l R.R. Passenger Corp. v. Morgan,
    536 U.S. 101 (2002) ........................................................................................8

Naumovski v. Norris,
    934 F.3d 200 (2d Cir. 2019) ........................................................................14

Niv v. Hilton Hotels Corp.,
    No. 06 CIV. 7839, 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007) ...........................24

Norville v. Staten Is. Univ. Hosp.,
    196 F.3d 89 (2d Cir. 1999) ...........................................................................16

Ray v. New York State Ins. Fund,
    No. 16 CIV. 2895, 2018 WL 3475467 (S.D.N.Y. July 18, 2018) .........................17

Rivera v. Brooklyn Hosp. Med. Ctr.,
    28 F. Supp. 3d 159 (E.D.N.Y. 2014) ..............................................................11

Rivera v. Heyman,
    No. 96 Civ. 4489, 1997 WL 86394 (S.D.N.Y. Feb. 27. 1997) ...............................24

Roberts v. Juliano,
    No. 9:18-CV-1434, 2020 WL 4739619 (N.D.N.Y. July 20, 2020) .........................18

Sealy v. State Univ. of New York At Stony Brook,
    408 F. Supp. 3d 218 (E.D.N.Y. 2019) .............................................................20

Sergilus v. Convenant House Under 21,
    No. 96 CIV. 6210, 1999 WL 717274 (S.D.N.Y. Sept. 15, 1999) ...........................14

Shukla v. Deloitte Consulting LLP,
    No. 1:19-CV-10578, 2020 WL 3181785 (S.D.N.Y. June 15, 2020) ......................15

Smith v. New York and Presbyterian Hosp.,
    440 F. Supp. 3d 303 (S.D.N.Y. 2020).............................................................11

Solomon v. Fordham Univ.,
    No. 18 CIV. 4615, 2020 WL 1272617 (S.D.N.Y. Mar. 17, 2020) .........................10

Soloviev v. Goldstein,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) .............................................................16

Spencer Trask Software & Info. Serv., LLC v. RPost Int'l Ltd.,
    206 F.R.D. 367 (S.D.N.Y. 2002) ................................................................23, 24

Staten v. City of New York,
    653 F. App'x 78 (2d Cir. 2016) ......................................................................10

Staten v. City of New York,
    No. 14 CIV. 4307, 2015 WL 4461688 (S.D.N.Y. July 20, 2015) ..........................................10

Sutter v. Dibello,
    No. 18-CV-817, 2021 WL 930459 (E.D.N.Y. Mar. 10, 2021)..............................................19

Taylor v. City of New York,
    207 F. Supp. 3d 293 (S.D.N.Y. 2016)....................................................................................10

Thomas v. Bergdorf Goodman, Inc.,
    No. 03 Civ. 3066, 2004 WL 2979960 (S.D.N.Y. Dec. 22, 2004)..........................................14

Trachtenberg v. Dep't. of Educ. of City of New York,
    937 F. Supp. 2d 460 (S.D.N.Y. 2013).......................................................................................7

Williams v. Metro-N. Commuter R. Co.,
    No. 11 CIV. 7835, 2012 WL 2367049 (S.D.N.Y. June 20, 2012...........................................9

Wilson v. JPMorgan Chase Bank, N.A.,
    No. 20-CV-4558, 2021 WL 918770 (S.D.N.Y. Mar. 10, 2021).............................................13

Wimberly v. automotiveMastermind, Inc.,
    No. 20-CV-2880, 2021 WL 2043623 (S.D.N.Y. May 21, 2021) ...........................................12

Xiang v. Eagle Enters., LLC,
    No. 19-cv-1752, 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) ...............................................23

Yan v. Ziba Mode Inc.,
    No. 15-CV-47, 2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016) ..............................................15

Zoulas v. New York City Dep't. of Educ.,
    400 F. Supp. 3d 25 (S.D.N.Y. 2019)......................................................................................14

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 7

Fed. R. Civ. P. 26 (c) ...........................................................................................................23

N.Y. Exec. Law § 296(6) ......................................................................................................21

N.Y. C.P.L.R. 214(2) ..............................................................................................................8

N.Y.C. Admin. Code § 8-107(6)...........................................................................................21

N.Y.C. Admin. Code § 8-402 .................................................................................................8

Defendants Quinn, Emanuel, Urquhart & Sullivan, LLP (the "Firm" or "Quinn Emanuel"), Peter Calamari ("Calamari"), and David Eskanos ("Eskanos," and collectively with the Firm and Calamari, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint filed by plaintiff Nicholas Mondelo ("Plaintiff") and for a stay of discovery (the "Motion").[1]

## PRELIMINARY STATEMENT

Plaintiff, who identifies as Hispanic through European-Spanish ancestry and national origin, was an IT Director at Quinn Emanuel.  He was terminated in May 2019, after a poorly executed rollout of a software upgrade.  Because there is no hint of animus in that decision, Plaintiff seeks to manufacture it, by imputing improper motivation to any facially neutral scrutiny he received during his employment.  He thus asks this Court to resolve whether his travel applications were questioned properly, his computer orders were filled timely, and his overtime requests were considered fairly.  But, the federal courts are not a court of personnel appeals.  Here, the only alleged animus is a ***single*** derogatory comment in 2015.  Even if the comment was made, *which is denied*, it was made outside any applicable statute of limitations period, and cannot justify an inquest into every work grievance Plaintiff held over his ensuing four years of employment. Courts routinely dismiss claims under these circumstances, and Plaintiff's claims equally fail.

***There was no hostile work environment.***  As stated, Plaintiff did not experience any hostility within the statute of limitations period, and only a single allegedly hostile act outside the limitations period – a derogatory comment in 2015.  That isolated comment cannot form the basis of his claim, and any animus in that comment cannot be imputed to the facially neutral scrutiny

---

[1]     Plaintiff's complaint (the "Complaint" or "Compl.") is attached as Exhibit 1 to the accompanying Declaration of Mark W. Lerner, dated July 12, 2021 ("Lerner Decl.").

and oversight he received during four subsequent years of employment.  Plaintiff's hostile work environment claims thus fail to plead discriminatory or retaliatory animus, are untimely under the NYSHRL and NYCHRL, and fail to plead a severe and pervasive work environment under the NYSHRL and Section 1981.

*There is no plausible inference that discrimination or retaliation motivated Plaintiff's termination or demotion.*  Plaintiff allegedly was demoted in March 2018 and was terminated in May 2019.  These actions were not discriminatory or retaliatory because no plausible inference of such intent can be drawn in either instance.  Not a single derogatory remark was made to Plaintiff since at least September 2015; and Plaintiff did not engage in any protected activity after allegedly complaining at that time.  Nor is there any allegation that Eskanos, who allegedly made the comment that sparked the complaint, played any decision-making role in either action.  Further, Plaintiff's demotion claims are untimely under the NYSHRL and NYCHRL as such demotion occurred outside the three-year statute of limitations.   And his termination claims are further refuted by the fact that he was 14 months removed from any interaction with Eskanos at the time of his termination, he was terminated by partners in New York, who held no alleged animus towards him, and he himself puts forward a non-discriminatory and non-retaliatory reason for his termination – his failed rollout of a software update.

*There is no suggestion that Calamari acted improperly.*  There was no discrimination here to aid and abet; but even if there were, Calamari played no part in it.  Either way, Plaintiff's aiding and abetting claims fail.  Indeed, Calamari not only did not discriminate against Plaintiff, but he already had left his role as Managing Partner of the New York office before the three-year statute of limitations period commenced.  Because he had no duty to investigate Plaintiff's grievances, he could not have failed to do so.

For the reasons set forth above and further below, the Complaint fails to plead any actionable form of harassment, discrimination or retaliation.   Accordingly, it should be dismissed against the Defendants in its entirety, with prejudice.

## BACKGROUND[2]

### A. The Firm Hires Plaintiff

Defendant Quinn Emanuel is an international business litigation firm headquartered in Los Angeles, with its largest office in New York.  (Compl. ¶¶ 4-5, 14, 28, 31.)  Defendant David Eskanos ("Eskanos"), the Firm's Chief Information Officer, was a long-standing Firm employee based in Los Angeles.  (Id. ¶¶ 7, 14, 21.)  Plaintiff identifies in his Complaint as a Hispanic-American of European-Spanish ancestry, ethnicity and national origin.  (Id. ¶ 8.)

Plaintiff was hired by the Firm around April 2015 to be its Regional Information Technology ("IT") Director for the U.S. East Coast and Midwest.  (Id. ¶¶ 8, 11.)  While Plaintiff does not indicate the size of the IT department, he was not its only Hispanic employee, although he may have been its only employee with a European-Spanish background.  (Id. ¶ 15.)  In his position, Plaintiff initially reported to Eskanos and Robert Shutt ("Shutt"), the Firm's Director of IT, and was responsible for managing the IT services for the Firm's offices in New York, Washington D.C. and Chicago.  (Id. ¶¶ 12-13.)

### B. Plaintiff Alleges a Single Instance of Discriminatory Animus by Eskanos

After his hire, Plaintiff asserts that Eskanos began subjecting Plaintiff to a "constant stream of harassment, ridicule, and abuse," including cursing, insults, mockery, and threats of termination. (Compl. ¶¶ 15-17.)  Plaintiff does not claim these incidents were discriminatory in nature; indeed,

---

[2]   Although many of the material allegations in Plaintiff's Complaint are false, for purposes of this Motion, they are analyzed as if true.

it is unclear whether Eskanos even was aware of Plaintiff's European-Spanish background at the time.  But, Plaintiff asserts that in September 2015, he was discussing plans to visit family in Spain, at which point Eskanos allegedly called him a "spic."  (Id. ¶ 18.)  This is the first and only discriminatory remark Plaintiff allegedly received during more than four years of employment.  Thereafter, Plaintiff asserts he complained to Human Resources about Eskanos (id. ¶ 19), at which point Defendant Peter Calamari ("Calamari"), the then-managing partner of the Firm's New York office, and Richard Schirtzer ("Schirtzer"), the then-managing partner of the Firm's Los Angeles office, were placed as a buffer between Plaintiff and Eskanos.  (Id. ¶ 24.)  Under this arrangement, Plaintiff's reporting line was changed so that he received his instructions from Shutt and other IT managers in the Los Angeles office.  (Id. ¶ 25.)  Plaintiff claims he still was required to obtain approval from Eskanos for certain issues, but that Calamari was available to facilitate such interactions.  (Id.)  At this point, all improper comments ceased; indeed, Plaintiff does not allege a single improper comment from Eskanos or anyone else at the Firm after September 2015.

## C.  Plaintiff's Employment at the Firm between October 2015 and March 2018

Over the next 2 1/2 years, Plaintiff disapproves of how Eskanos treated his requests for resources and approvals, claiming Eskanos overly scrutinized Plaintiff's travel requests (Compl. ¶¶ 27-28), delayed approving his orders for computer leases (id. ¶ 29), and denied his overtime requests to remove or replace computers.  (Id. ¶ 31.)  The Complaint asserts that certain other IT Directors did not experience similar oversight (id. ¶¶ 28-29, 31), but it does not allege the race, ethnicity, ancestry or national origin of those employees.  Plaintiff also laments Eskanos's handling of a D.C. office move in January 2018.  As Plaintiff asserts, Eskanos charged Plaintiff with overseeing the move (id. ¶ 32), then denied Plaintiff's budget as too costly and reassigned the move to someone else, only to later reassign it back to Plaintiff (id. ¶¶ 34-35).  In none of these

instances does Plaintiff allege any physically threatening, humiliating or other offensive conduct. Rather, at worst, Plaintiff claims he was subject to aggressive questioning.  (<u>Id.</u> ¶ 29.)

### D.  Calamari Leaves His Post as Managing Partner of the New York Office

From September 2015 through March 2018, Calamari allegedly was tasked with assisting Plaintiff, at Plaintiff's request, in interfacing with Eskanos.  (<u>Id.</u> ¶¶ 24-25.)  During that time, Plaintiff alleges that Calamari asked Plaintiff to try working issues out with Eskanos before involving Calamari, but he does not assert that Calamari ever refused assistance.  (<u>Id.</u> ¶¶ 24-36.) Quite the opposite, Plaintiff recounts only a single instance, in January 2018, where he sought Calamari's help in crafting a letter to Eskanos to justify Plaintiff's requested budget for the D.C. office move; Plaintiff admits Calamari provided such assistance.  (<u>Id.</u> ¶ 33.)  Plaintiff also claims that at certain points between September 2015 and March 2018 he informed Calamari about Eskanos's unequal treatment and interference with Plaintiff's job duties and that Calamari took no action. (<u>Id.</u> ¶ 36.)  Plaintiff never suggests that he informed Calamari such actions were based on discrimination.  (<u>See</u> <u>generally</u> ¶¶ 24-36.)

In March 2018, Calamari ceased being Managing Partner of the New York office.  (<u>Id.</u> ¶ 6.)  He informed Plaintiff that his buffer role therefore would cease.  (<u>Id.</u> ¶ 37.)  At that point, Calamari had no further role in Plaintiff's interactions with Eskanos.  When Plaintiff later sought to obtain assistance in interfacing with Eskanos, Plaintiff claims Calamari refused.  (<u>Id.</u> ¶ 54.)

### E.  Plaintiff Has No Direct Communication with Eskanos Post-March 2018

In March 2018, Plaintiff ceased all communications and contact with Eskanos.  As Plaintiff asserts, at that time, the Firm hired Kevin Mitchell as the Firm's Regional IT Director for the U.S. East Coast.  (<u>Id.</u> ¶ 38.)  Plaintiff does not allege Eskanos or Calamari had any role in the decision. Mitchell took responsibility for the Firm's D.C. and Chicago offices, while Plaintiff continued to

oversee the IT department for the Firm's New York office.  (Id. ¶¶ 38-39.)  Plaintiff characterizes this change as a demotion.  Significantly, Plaintiff thereafter reported to Mitchell directly and not Eskanos.  (Id. ¶ 41.)   Indeed, Plaintiff does not allege any communications with Eskanos from March 2018 through his termination in May 2019. (See generally Compl. ¶¶ 41-70.)   While Plaintiff alleges he continued to experience vicarious mistreatment by Eskanos through Mitchell, he recounts only a single such instance over the next 15 months.

Specifically, in early 2019, more than nine months after Plaintiff's alleged demotion, he claims that he was directed to upgrade the Firm's computers to Windows 10, despite his concerns that the office was not ready.  (Id. ¶¶ 44-51.)  Plaintiff concedes the upgrade was firm-wide and that all offices experienced issues with it.  (Id. ¶ 45.)  He claims the London office upgrade was held at an earlier point, but does not allege for how long, and does not assert that the upgrade was held at any U.S. office.  Plaintiff speculates that the upgrade directive came from Eskanos, but was told only that it was from Los Angeles; i.e., the Firm's headquarters.  (Id. ¶¶ 53, 56.)

By Spring 2019, Plaintiff still had not resolved the upgrade issues.   After Plaintiff experienced major issues with a test-group, he complained about the timing and feasibility of the rollout to Mitchell and an individual named "Ms. Fogler," and expressed concern that he would be blamed for the failure.  (Id. ¶¶ 50-60.)  By April 2019, despite the passage of approximately three months, Plaintiff still had not executed the Windows 10 rollout.  (Id. ¶ 56.)  Mitchell and Ms. Fogler instructed Plaintiff to continue the rollout, and rejected his request to blame Eskanos for any work disruptions.  (Id. ¶¶ 56-60.)  Plaintiff suggests that his inability to conduct the rollout was the impetus for his termination.  He believes Eskanos – who had not spoken with Plaintiff in at least a year – sacrificed office productivity solely to sabotage Plaintiff.  (Id. ¶¶ 58-61.)

On May 19, 2019, Plaintiff alleges that several unnamed partners in New York terminated his employment.  (Id. ¶ 66.)  At no point, however, does Plaintiff allege that Eskanos or Calamari participated in the termination call, or otherwise had any role in the decision to terminate his employment.

## ARGUMENT

## I.   LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (citations omitted).  The plausibility requirement applies equally to discrimination claims.  While a plaintiff need not set forth a prima facie claim, the prima facie elements "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible."  Trachtenberg v. Dep't. of Educ. of City of New York, 937 F. Supp. 2d 460, 466 (S.D.N.Y. 2013).   A plaintiff thus must "plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality," and "supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'"  Downey v. Adloox Inc., 238 F. Supp. 3d 514, 519 (S.D.N.Y. 2017) (citations omitted).

## II.     PLAINTIFF FAILS TO STATE A HOSTILE WORK ENVIRONMENT CLAIM

### A.     Plaintiff's NYSHRL and NYCHRL Claims Fail Because They Are Untimely

The statute of limitations for claims under the NYSHRL and NYCHRL is three years.  See N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8-402; see also Bermudez v. City of New York, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011) (McMahon, J.).  While a continuing violation theory may allow certain untimely acts to be considered as part of a timely claim, it is black letter law that a hostile work environment claim cannot survive absent actionable conduct within the limitations period.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002) ("A court's task [in analyzing the continuing violation doctrine] is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.").

Here, the only possible alleged hostility within the three-year limitations periods (i.e., beginning March 24, 2018), is that the Firm and Eskanos had unreasonable expectations regarding Plaintiff's ability to rollout an upgrade of computer software.[3]  (See generally Compl. ¶¶ 44-60.) But Eskanos is not alleged to have had any contact with Plaintiff concerning the rollout and neither of the two individuals who did have such contact (Mitchell and Ms. Fogler) are alleged to have animus against Plaintiff.  (Id.)  Indeed, there is not a single allegation of any animus by anyone at the Firm preceding, accompanying or succeeding this rollout.  Where, as here, only facially neutral conduct is alleged within the limitations period, a hostile work environment is deficient and subject

---

[3]      Plaintiff alleges that Eskanos, through Mr. Mitchell, subjected him to unreasonable expectations and denigrated the quality of his work, but does not provide a single example of such conduct.  Such conclusory allegations cannot support a hostile work environment claim or establish the plausibility to defeat a motion to dismiss.  Haggood v. Rubin & Rothman, LLC, No. 14-CV-34L, 2014 WL 6473527, at *18 (E.D.N.Y. Nov. 17, 2014) (finding plaintiffs' conclusory allegations concerning the reprimands they received were insufficient to sustain a hostile work environment claim).

to dismissal.  See Carrington v. New York City Human Res. Admin., No. 19 CIV. 10301, 2020 WL 2410503, at *5 (S.D.N.Y. May 12, 2020) (dismissing a hostile work environment claim under the NYSHRL and NYCHRL where plaintiff "has not plausibly alleged, as she must, facts suggesting that racial animus drove" the only allegations falling within the limitations period, i.e. overtime denials, disciplinary charges, and letters to file); Williams v. Metro-N. Commuter R. Co., No. 11 CIV. 7835, 2012 WL 2367049, at *14 (S.D.N.Y. June 20, 2012) (McMahon, J.) (denying leave to amend to add hostile work environment claim under the NYCHRL and dismissing federal hostile work environment claims, finding that plaintiff failed to allege any facts to suggest the timely conduct occurred because of plaintiff's protected characteristic); Lee v. Overseas Shipholding Grp., Inc., No. 00 CIV. 9682, 2001 WL 849747, at *9 (S.D.N.Y. July 30, 2001) (dismissing hostile work environment claim where conduct occurring within the limitations period was facially neutral).

**B.      Plaintiff's Section 1981 and NYSHRL Claims Fail Because They Do Not Plead a Severe and Pervasive Hostile Work Environment**

In order to establish a hostile work environment claim under Section 1981 and the NYSHRL, a plaintiff must plead that the harassment experienced was so severe or pervasive as to alter the employment conditions and create an abusive working environment.  Carter v. New Venture Gear, Inc., 310 F. App'x 454, 457 (2d Cir. 2009); Bermudez, 783 F. Supp. 2d at 586 (hostile work environment claims under the NYSHRL and federal law are treated the same).  In determining whether conduct is severe and pervasive, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Plaintiff here asserts a single hostile act – a derogatory comment allegedly made in September 2015. (Compl. ¶ 18.)[4]  In analyzing the sufficiency of hostile work environment claims, courts may consider non-discrete actions outside the limitations period on a continuing violation theory if they are "sufficiently related" to the actionable conduct. McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010) ("[An] incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related."); Staten v. City of New York, No. 14 CIV. 4307, 2015 WL 4461688, at *10 (S.D.N.Y. July 20, 2015), aff'd, 653 F. App'x 78 (2d Cir. 2016) (explaining "the timely event must be sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment.") (citations omitted); Taylor v. City of New York, 207 F. Supp. 3d 293, 310 (S.D.N.Y. 2016) (dismissing a hostile work environment claim where timely allegations were not sufficiently related to conduct occurring prior to the applicable statutory period).

Here, because no derogatory comments were made to Plaintiff within the limitations period, the untimely remark cannot be considered as part of Plaintiff's claim. Staten v. City of New York, 653 F. App'x 78, 80 (2d Cir. 2016) (affirming grant of motion to dismiss, finding claims barred where "time-barred hostile work environment claims alleged derogatory comments" and timely claims involved "complaints about specific job assignments, orders that he disagreed with, or issues with the department confirming that he complied with internal rules"); Solomon v. Fordham Univ., No. 18 CIV. 4615, 2020 WL 1272617, at *14 (S.D.N.Y. Mar. 17, 2020) (on

---

[4]     Plaintiff also asserts that he was subject to additional derisive comments by Eskanos until September 2015, such as Eskanos calling him worthless and stupid, but does not impute any discriminatory animus to such statements, which are facially neutral. (Compl. ¶¶ 15-17.)  In any event, because such comments did not continue in the limitations period, they too are time-barred.

motion to dismiss, declining to consider alleged humiliating conduct outside the limitations period that was insufficiently related to the alleged hostile actions within the limitations period).

Nonetheless, even if the derogatory comment was considered, it is insufficient to state a hostile work environment under Section 1981 and the NYSHRL.  It is well-settled that isolated remarks are insufficient to plead a claim for hostile work environment. See Lenart v. Coach Inc., 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (collecting cases dismissing claims for hostile work environment based on stray remarks); De La Peña v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 416 (E.D.N.Y. 2013) (derogatory comment about plaintiff's ethnicity/ancestry/national origin was a stray remark that did not objectively constitute the ridicule or insult that is sufficiently severe to create a hostile work environment); Rivera v. Brooklyn Hosp. Med. Ctr., 28 F. Supp. 3d 159, 163 (E.D.N.Y. 2014) ("There is only one remark that referenced his ethnic origin in the entirety of his hostile work environment allegations; that is the classic 'stray remark' which, standing alone, will not support a discrimination or hostile work environment claim.").

Beyond the derogatory comment, the only hostility Plaintiff allegedly experienced was excessive scrutiny, unreasonable expectations, and delayed responses and approvals.[5]  As the Second Circuit has held, such conduct – even when paired with isolated derogatory comments –

---

[5]     Although not clearly alleged to be part of his hostile work environment claim, Plaintiff also alleges that Defendants failed to remediate the purported discrimination and demoted him.  Such conduct cannot form the basis for a hostile work environment claim.  Fincher v. Depository Tr. and Clearing Corp., 604 F.3d 712, 724 (2d Cir. 2010) (courts reject "the notion that a failure to adequately remediate [] harassment itself constitutes an act that may contribute to a hostile work environment claim."); Hall v. Jewish Home & Hosp., No. 16 CIV. 9881, 2017 WL 5665660, at *4 (S.D.N.Y. Nov. 15, 2017) ("[T]he failure to investigate a discrimination complaint or remediate workplace discrimination does not 'contribute to or constitute a hostile work environment,' because it does not alter the conditions of employment.") (citations omitted); Smith v. New York and Presbyterian Hosp., 440 F. Supp. 3d 303, 346 (S.D.N.Y. 2020) (a plaintiff cannot "piggyback [] discrete adverse acts . . . onto hostile work environment claims in order to make them actionable").

is insufficient to state a claim for hostile work environment.  Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir 2015) (negative comments, wrongful reprimands, excessive scrutiny, impatient and harsh tones, and refusals to meet are insufficient to support a hostile work environment finding); Fleming v. MaxMara USA, Inc., 371 Fed App'x. 115, 118-19 (2d Cir. 2010) (a derogatory comment, excessive work criticism, refusal to answer work-related questions, arbitrarily imposed duties, and rude emails are insufficient to support a hostile work environment finding); Demoret v. Zegarelli, 451 F.3d 140, 150 (2d Cir. 2006) overruled in part on other grounds by Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) (allegations that defendant had "review[ed Plaintiff's] budget with a fine-toothed comb" are insufficient to support a hostile work environment finding).

Indeed, hostile work environment claims under Section 1981 and the NYSHRL based on similar conduct routinely are dismissed.  See Wimberly v. automotiveMastermind, Inc., No. 20-CV-2880, 2021 WL 2043623, at *5 (S.D.N.Y. May 21, 2021) (dismissing hostile work environment claim under Section 1981, finding "the Court of Appeals and courts in this circuit have found that allegations of reprimands and scrutiny similar to or worse than the conduct alleged in this case do not suffice to create a hostile work environment"); Alexander v. New York City Dep't of Educ., No. 19-CV-7023, 2020 WL 7027509, at *8 (S.D.N.Y. Nov. 30, 2020) (dismissing hostile work environment claim under the NYSHRL, finding plaintiff's allegations concerning her excessive workload, reassignment of her duties, and alleged unfair disciplinary measures failed to state claim); Isbell v. City of New York, 316 F. Supp. 3d 571, 592 (S.D.N.Y. 2018) (dismissing hostile work environment claims under Section 1981 and the NYSHRL, finding plaintiff's allegations of supervisor's heavy scrutiny, criticism, and unfair discipline were insufficient to state a claim); Moore v. Verizon, No. 13-CV-6467, 2016 WL 825001, at *12-13 (S.D.N.Y. Feb. 5,

2016) (dismissing hostile work environment claim under the NYSHRL and the NYCHRL based on "harsh tones, exclusion from meetings, angry stares, and insulting remarks, along with the alleged monitoring of Plaintiff's calls with customers").

Finally, under Section 1981, the NYSHRL and the NYCHRL, a plaintiff must show "that the hostile work environment was caused by animus towards [him] as a result of [his] membership in a protected class." Bermudez, 783 F. Supp. 2d at 578; see also Wilson v. JPMorgan Chase Bank, N.A., No. 20-CV-4558, 2021 WL 918770, at *5 (S.D.N.Y. Mar. 10, 2021) (dismissing hostile work environment claim under the NYSHRL and the NYCHRL because plaintiff "does not plausibly allege that she was treated poorly 'at least in part *because of* her race") (citations omitted, emphasis in original); Moore, 2016 WL 825001, at *13 (dismissing federal, NYSHRL, and NYCHRL hostile work environment claims where plaintiff's "allegations fail to demonstrate a link between her unpleasant office environment and discriminatory behavior based on race or gender"). Here, outside of the single untimely comment, there is no non-conclusory allegation that any of the subsequent conduct occurred because of Plaintiff's protected class. Accordingly, the Section 1981, NYSHRL and NYCHRL claims fail.

## III.   PLAINTIFF FAILS TO STATE A DISCRIMINATION CLAIM

To defeat a motion to dismiss under the NYSHRL and NYCHRL, a plaintiff must plausibly allege that (1) the employer took an adverse action against him, and (2) his protected characteristic was a motivating factor in the decision. Cardwell v. Davis Polk & Wardwell LLP, 1:19-CV-10256-GHW, 2020 WL 6274826, at *17 (S.D.N.Y. Oct. 24, 2020); Bermudez, 783 F. Supp. 2d at 577 ("[C]laims of employment discrimination under the NYCHRL are analyzed under the same McDonnell Douglas framework applicable to . . . NYSHRL claims."). A plaintiff thus must come forward with "facts suggesting an inference of discriminatory motivation." Cardwell, 2020 WL

6274826, at *17.  By contrast, under the stricter Section 1981 standards, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."  Comcast Corp. v. N.A. of African Am.-Owned Media, 140 S. Ct. 1009, 1019, (2020).  Here, Plaintiff alleges two adverse actions: his purported demotion in March 2018 and his termination on May 19, 2019.[6]  Plaintiff's Complaint wholly fails, however, to allege that the alleged actions occurred under circumstances giving rise to an inference of discrimination.

**Termination.**  Plaintiff fails to allege that his termination was motivated by discrimination. The only discriminatory conduct he pleads was a derogatory comment allegedly made by Eskanos in September 2015.  To raise an inference of discrimination from that remark, it must have a "causal nexus to the termination decision."  Luka v. Bard Coll., 263 F. Supp. 3d 478, 487-88 (S.D.N.Y. 2017).  By contrast, "[s]tray remarks are not evidence of discrimination if they are not temporally linked to an adverse employment action or if they are made by individuals without decision-making authority."  Sergilus v. Convenant House Under 21, No. 96 CIV. 6210, 1999 WL 717274, at *2 (S.D.N.Y. Sept. 15, 1999); Naumovski v. Norris, 934 F.3d 200, 216 (2d Cir. 2019) ("[S]tray remarks, even if made by a decision-maker, do not constitute sufficient evidence to make

---

[6]     Plaintiff also asserts he was subjected to increased scrutiny and threats of termination.  It is not clear whether he claims that such conduct is actionable independently.  If he does, he is wrong as such claims do not constitute adverse actions.  See Zoulas v. New York City Dep't. of Educ., 400 F. Supp. 3d 25, 55 (S.D.N.Y. 2019) (claims that defendants "embarrassed, demeaned, intimidated, and excessively scrutinized [plaintiff] do not constitute adverse employment actions"); Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001), aff'd 51 F. App'x 55 (2d Cir. 2002) (collecting cases holding that "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions"); Thomas v. Bergdorf Goodman, Inc., No. 03 Civ. 3066, 2004 WL 2979960, at *10 (S.D.N.Y. Dec. 22, 2004) ("The mere threat of disciplinary action, including the threat of termination, does not constitute an adverse action materially altering the conditions of employment."); Johnson v. City of New York, No. 17-CV-75852019 WL 4468442, at *8-9 (E.D.N.Y. Sep. 18. 2019) (finding facially neutral reprimands and increase of workload, and denial of overtime could not constitute an adverse action). Nonetheless, even if such conduct were actionable, it fails for the same reasons Plaintiff's other discrimination claims fail.

out a case of employment discrimination" because they are insufficient to support an inference of discriminatory intent).  Here, the alleged comment was neither temporally linked to Plaintiff's termination (separated by almost four years), nor made by a decision-maker.

Courts routinely dismiss discrimination claims, such as here, where the alleged verbal comments lack a causal nexus to the decision.  See Martin v. City Univ. of New York, No. 17 Civ. 6791, 2018 WL 6510805 (S.D.N.Y. Dec. 11, 2018) ("This Court cannot infer discriminatory intent from a single remark, made ten months prior to Plaintiff's termination [from employer.]"); Luka, 263 F. Supp. 3d at 487 (S.D.N.Y. 2017) (dismissing claims where "the alleged [discriminatory] remark was neither made close in time to the decision nor in relation to the specific employment decision challenged"); De La Peña, 953 F. Supp. 2d at 413  (dismissing discrimination claim based on a discriminatory remark that was "far removed in time" and "tangential" to plaintiff's termination), aff'd, 552 Fed. App'x. 98 (2d Cir. 2014); Moore v. Verizon, No. 13-CV-6467, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (dismissing discrimination claim where derogatory comment occurred "at least months" prior to plaintiff's first suspension and "nearly a year prior to her termination"); Shukla v. Deloitte Consulting LLP, No. 1:19-CV-10578, 2020 WL 3181785, at *8 (S.D.N.Y. June 15, 2020) (derogatory comment made five months prior to termination was insufficient to sustain discrimination claim); see also Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 412 (S.D.N.Y. 2012) (dismissing discrimination claim where plaintiff failed to allege facts "from which it is possible to plausibly infer a causal nexus between his heterosexuality and his termination"); Yan v. Ziba Mode Inc., No. 15-CV-47, 2016 WL 1276456, at *4 (S.D.N.Y. Mar. 29, 2016) (dismissing discrimination claims where plaintiff alleged no facts "concerning the frequency or temporal proximity of the [derogatory] comments to Plaintiff's termination").

Further, Plaintiff does not allege that Eskanos was a decision-maker in his termination. Rather, Plaintiff asserts that he no longer had any reporting line to Eskanos beginning in March 2018, and was accountable to the partners in the New York office, who terminated his employment. Such claim thus fails with respect to Eskanos.  Further, courts routinely dismiss discrimination claims, such as here, where the alleged verbal comments were made by a non-decision-maker.  See Soloviev v. Goldstein, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (granting motion to dismiss where the plaintiffs "fail[ed] to allege that any of the named [i]ndividual ... [d]efendants or anyone with control over the decision to fire [the plaintiff] made [the alleged discriminatory] comments"); see also Hollingsworth v. Theat. Teamsters Union Local 817 IBT, No. 16-CV-4700, 2020 WL 2219212, at *6 (E.D.N.Y. May 7, 2020) ("Courts in the Second Circuit have routinely held that comments made by someone without a direct role in the termination decision are not probative of an intent to discriminate.").

Nor can Plaintiff resurrect his failed claim with conclusory allegations of differential treatment in other circumstances.  A plaintiff "may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." Norville v. Staten Is. Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999).  To do so, however, a plaintiff must at minimum allege that defendants treated members of other races, ethnicities, ancestries or national origins differently.   Here, Plaintiff does not even allege the race/ethnicity/ancestry/ national origin of the other IT directors, and his claim is defective for this reason alone.  See Doe v. New York Univ., 438 F. Supp. 3d 172, 182 (S.D.N.Y. 2020), appeal dismissed (June 8, 2020) ("[C]ourts in this circuit have consistently dismissed selective enforcement claims absent allegations 'that a school treated similarly situated members of the opposite sex—that is, members of the opposite sex facing comparable disciplinary charges—differently.'") (citations omitted); see

also Cummings v. City of New York, No. 19-CV-7723, 2021 WL 1163654, at *9 (S.D.N.Y. Mar. 26, 2021) (McMahon, J.), reconsideration denied, 2021 WL 1664421 (S.D.N.Y. Apr. 28, 2021) (complaint is deficient where if fails to plead differential treatment of "someone similarly situated to plaintiff but of a different race").  Further, the alleged differential treatment occurred at least 14 months prior to his termination; thus no causation can be inferred.  Finally, Plaintiff does not allege that similarly situated individuals were not terminated; instead, he alleges differential treatment in other unrelated instances.  This further weakens the causal nexus of any animus and requires Plaintiff to allege facts evidencing both that his "race was a motivating factor for [his] less-favorable treatment on other occasions, and [ ] that such race-based motivation can be extrapolated to [his] termination." Ray v. New York State Ins. Fund, No. 16 CIV. 2895, 2018 WL 3475467, at *17 (S.D.N.Y. July 18, 2018).  Such plausibility is undermined where the less favorable treatment, like here, "is dispersed over a period of numerous years."  Id. (dismissing discrimination claim, finding other instances of differential treatment could not plausibly be extrapolated to impugn the plaintiff's termination).

Lastly, Plaintiff's Section 1981 claim is deficient because he does not plausibly allege that his Spanish ethnicity or ancestry was the "but for" cause for his termination.  It is "settled that Section 1981 does not prohibit discrimination on the basis of . . . national origin." See Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) (citations omitted).  Here, Plaintiff refers to the purported discrimination as based on his "Spanish race and/or ethnicity/ancestry/national origin." (See Compl. ¶¶ 1, 86, 93, 101, 108.)  Yet, nowhere in the Complaint does Plaintiff allege facts that would establish he was treated differently based on his race (which encompasses his ethnicity or ancestry) as opposed to his national origin.  Therefore, Plaintiff fails to plead plausible "but for" causation.  See Nadesan v. Citizens Fin. Grp., 673 F. App'x 47, 49 (2d Cir. 2016) (affirming

dismissal of Section 1981 where plaintiff alleged no facts to establish discrimination was based on race as opposed to national origin).

***Demotion***.  Plaintiff's demotion claim is time-barred under the NYSHRL and NYCHRL. A claim is implausible and deficient where it omits the specific dates of the alleged acts, thereby forestalling a determination of its timeliness.  Roberts v. Juliano, No. 9:18-CV-1434, 2020 WL 4739619, at *5 (N.D.N.Y. July 20, 2020), report and recommendation adopted, 2020 WL 4732100 (N.D.N.Y. Aug. 14, 2020) ("[T]he intentional omission of relevant dates should also not save a pleading from dismissal on statute of limitations grounds."); Mackenzie Architects, PC v. VLG Real Estate Dev., LLC, No. 1:15-CV-1105, 2016 WL 4703736, at *8 (N.D.N.Y. Sept. 8, 2016) (plaintiff failed to allege facts sufficient to establish that an action had been timely filed because the plaintiff failed to allege the dates when the defendants' obligations arose or the dates when the defendants refused to pay); Eng v. New York City Police Dep't, No. 95 CIV. 5845, 1996 WL 521421, at *6 (S.D.N.Y. Sept. 12, 1996) ("failure to particularize the dates of the alleged discriminatory acts" renders the Court "unable to determine the timeliness of the claims under Title VII").  Plaintiff filed his Complaint on March 23, 2018.  Thus, any claims accruing prior to March 23, 2018 are untimely.  Because Plaintiff pleads that he was demoted in March 2018, he fails to allege a plausible and timely claim.[7]

To the extent the demotion claim is not time-barred, however, it nonetheless fails along with the Section 1981 claim, because there is no plausible inference that suggests the demotion was related to discrimination.  As shown above, Courts routinely dismiss discrimination claims, such as here, where the alleged verbal comments lack a causal nexus to the decision.  Eskanos is

---

[7]      Similarly, to the extent any other allegation set forth in the Complaint that occurred prior to March 23, 2018, could be considered an adverse action, such claim also would be untimely.

not alleged to be the decision-maker in Plaintiff's demotion, and Plaintiff cannot resurrect his failed claim with conclusory allegations of differential treatment in other circumstances.  Finally, as shown above, causation is particularly attenuated for Plaintiff's Section 1981 claim, which requires "but for" causation.

## IV.   PLAINTIFFS' RETALIATION CLAIMS FAIL TO STATE A CLAIM

To establish a prima facie case of retaliation under Section 1981, the NYSHRL and the NYCHRL, a Plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Lebowitz v. New York City Dep't of Educ., 407 F. Supp. 3d 158, 176–77 (E.D.N.Y. 2017).[8]  Plaintiff here alleges a single complaint of discrimination, made sometime around September 2015.[9]

---

[8]     For claims under Section 1981 and the NYSHRL, a plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment.  See Bermudez, 783 F. Supp. 2d at 577.  By contrast, under the NYCHRL, "the retaliatory act that the plaintiff complains of must be reasonably likely to deter a person from engaging in protected activity."  Id.

[9]     The Complaint also alleges that Plaintiff reported Eskanos's "unequal treatment" to Calamari at unspecified times prior to March 2018.  (Compl. ¶ 36.)  This conclusory allegation is insufficient to constitute protected activity, even under the NYSHRL and NYCHRL.  See Fattoruso v. Hilton Grand Vacations Co., LLC, 525 Fed. App'x 26, 28 (2d Cir. 2013) (affirming dismissal of retaliation claim under the NYCHRL, holding a complaint that plaintiff was treated "unfairly" and plaintiff's expressions of dismay over "favoritism" do not constitute protected activity under the NYCHRL); Sutter v. Dibello, No. 18-CV-8172021 WL 930459, *29 (E.D.N.Y. Mar. 10, 2021) ("[G]eneralized grievances about an unpleasant or even harsh work environment, without more, do not reasonably alert an employer of discriminatory conduct and therefore fail to rise to the level of protected activity.")(emphasis in original); Bakeer v. Nippon Cargo Airlines, Co., No. 09 CV 3374, 2011 WL 3625103, at *38 (E.D.N.Y. July 25, 2011), report and recommendation adopted, No. 09-CV-3374, 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011) ("To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity.").

Preliminarily, Plaintiff's NYSHRL and NYCHRL retaliation claims are barred under the three-year statute of limitations for any actions occurring prior to March 23, 2018.  This includes every purported retaliatory act alleged in the Complaint except Plaintiff's termination.  Further, as shown above, Plaintiff's retaliatory hostile work environment claims not only are untimely, but fail to plead a claim.  See Bertuzzi v. Copiague Union Free Sch. Dist., No. CV-17-4256, 2020 WL 5899949, at *16 (E.D.N.Y. Mar. 9, 2020), report and recommendation adopted as modified, 17-CV-4256, 2020 WL 3989493 (E.D.N.Y. July 15, 2020) (holding plaintiff cannot assert a retaliation claim "based on a hostile workplace since the Court has already ruled that Plaintiff failed to state a claim for hostile work environment").

Plaintiff's retaliation claims fail for the additional reason that he cannot assert a causal connection between his alleged protected activity and any adverse action.  Such causality may be established in either of two ways: by showing that the protected activity was closely followed in time by the adverse action, or through evidence of retaliatory animus directed against a plaintiff by the defendant." Azeez v. Ramaiah, No. 14 CIV 5623, 2015 WL 1637871, at *8 (S.D.N.Y. Apr. 9, 2015).  Here, Plaintiff alleges neither.

Plaintiff's alleged complaint of discrimination against Eskanos was made in September 2015 – at least 2.5 years prior to his alleged demotion and 3.5 years prior to his termination. (Compl. ¶ 19.)  These gaps far exceed those previously held by courts as insufficient to sustain a retaliation claim.  Id. (finding gap of one year insufficient to sustain retaliation claim); Jenkins v. Arcade Bldg. Maint., 44 F. Supp. 2d 524, 529 (S.D.N.Y. 1999) (finding two year gap insufficient to sustain retaliation claim); Sealy v. State Univ. of New York At Stony Brook, 408 F. Supp. 3d 218, 228 (E.D.N.Y. 2019), aff'd, 834 F. App'x 611 (2d Cir. 2020) (finding gap of "at least five

months but as long as eleven months" between plaintiff's protected activity and adverse action insufficient to sustain retaliation claim).

Nor does the Complaint allege sufficient facts to demonstrate retaliatory animus.  There is no allegation in the Complaint that Eskanos, the Firm, or any other individual took action against Plaintiff based on his discrimination complaint.  Indeed, the Complaint does not even allege that Eskanos participated in, or had any role in connection with, the decisions to change Plaintiff's title or terminate him.  Accordingly, Plaintiff's claims under Section 1981, the NYSHRL, and the NYCHRL must be dismissed in their entirety. See Lebowitz, 407 F. Supp. 3d at 177 (dismissing retaliation claim where complaint did not include "any specific facts linking [the] complaints to any retaliatory acts"); Azeez, 2015 WL 1637871, at *8 (S.D.N.Y. Apr. 9, 2015) (dismissing retaliation claim where complaint failed to allege evidence of discriminatory animus); Fouche v. St. Charles Hosp., 64 F. Supp. 3d 452, 458 (E.D.N.Y. 2014) (dismissing retaliation claim where alleged complaints were neutral and did not put employer on notice of alleged discrimination).

## V.      PLAINTIFF'S AIDING AND ABETTING CLAIMS MUST BE DISMISSED

The NYSHRL and NYCHRL prohibit actions that "aid, abet, incite, compel or coerce the doing" of unlawful acts of discrimination.  See N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-107(6).  To state such claim, a plaintiff must plead that the individual "actually participated" in the employer's unlawful conduct.  Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012); see also McHenry v. Fox News Network, LLC, No. 19 CIV. 11294, 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020); Alshami v. The City Univ. of New York, No. 160183/2019, 2021 WL 2226424, at *7 (N.Y. Sup. Ct. June 02, 2021) (dismissing aiding and

abetting claim).[10]   Plaintiff brings claims against Calamari for allegedly aiding and abetting Eskanos's conduct.   (Compl. ¶¶ 115-122.)[11]   Plaintiff, however, has failed to plead a plausible claim for aiding and abetting discrimination.

Preliminarily, liability "under the [NYS]HRL and the NYCHRL must first be established as to the employer/principal before an individual may be considered an aider and abettor." Davis-Bell, 851 F. Supp. 2d at 688.   Thus, where the "NYSHRL and the NYCHRL claim are not viable against [an] employer, they are not viable against the individual defendants." Id.   Here, because employer liability cannot be established against Eskanos, it cannot be established against Calamari.   Even assuming *arguendo* that the Complaint pleads discrimination by Eskanos, it fails to allege sufficient facts to suggest that Calamari actually participated in the discrimination.   To actually participate, Calamari either must have: (i) taken part in the primary violation; or (ii) failed in a supervisory capacity to take appropriate remedial or investigative measures.   See Heskin v. Insite Advert., Inc., No. 03 CIV.2508, 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005).

Plaintiff does not allege that Calamari partook in any discriminatory actions against him, *within or without* the three-year limitations period.   Nor does the Complaint allege that Calamari failed to act in a supervisory capacity within the three-year limitations period (i.e., at any time before March 23, 2018).   Indeed, Calamari ceased even acting as managing partner of the New York office before Plaintiff's demotion.   The sole possible allegation within the limitations period is that in the Spring of 2019, Calamari "refused to assist Plaintiff" after Plaintiff informed Calamari

---

[10]     Since the NYCHRL and NYSHRL "use virtually identical language, claims for individual liability under both statutes are subject to the same analysis." Davis-Bell, 851 F. Supp. 2d at 687; see also McHenry, 2020 WL 7480622, at *8 (citing Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004).

[11]     The Complaint's aiding and abetting claims against Calamari are limited to Eskanos's alleged discriminatory conduct or retaliation.   Plaintiff does not (and could not) allege Calamari aided and abetted the Firm's alleged discriminatory conduct or retaliation.

"about his concerns with the Windows 10 rollout and order to complete that rollout for the New York office." (Comp. ¶ 54.)  Nothing about this allegation indicates that Plaintiff's concerns were in any related to Plaintiff's race, ethnicity, ancestry, or national origin, as opposed to generalized workplace complaints.  <u>Fattoruso</u>, 525 F. App'x at 28 (dismissing NYCHRL retaliation claim because "complaint" failed to provide notice of alleged discrimination).  Because the Complaint does not allege that Calamari knew about, let alone actually participated in, any purported discriminatory conduct, Plaintiff's aiding and abetting claims must be dismissed.

Even if Plaintiff's allegation could be construed as discriminatory, *which it cannot*, it is undisputed that Calamari had no supervisory role over Plaintiff at that time.  Accordingly, Plaintiff's aiding and abetting claim against him must fail.  <u>See</u> <u>Xiang v. Eagle Enters., LLC</u>, No. 19-cv-1752, 2020 WL 248941, at *6-7 (S.D.N.Y. Jan. 16, 2020) (dismissing aiding and abetting NYCHRL and NYSHRL discrimination claims against an individual defendant because complaint contained no allegations that individual had decision-making authority with regard to the alleged discriminatory employment matters); <u>see also</u> <u>Conklin v. Cty. of Suffolk</u>, 859 F. Supp. 2d 415, 437 (E.D.N.Y. 2012) (dismissing aiding and abetting claim on motion for summary judgment where individual defendant had no supervisory role over the terms of plaintiff's employment).

## VI.   <u>DEFENDANTS' MOTION TO STAY DISCOVERY SHOULD BE GRANTED</u>

Defendants request an order pursuant to Fed. Rule Civ. P. 26(c) staying discovery and disclosure pending the resolution of their motion to dismiss.  Under Rule 26(c) of the Federal Rules of Civil Procedure, the Court has discretion to grant a protective order to stay discovery upon a showing of "good cause." <u>Spencer Trask Software & Info. Serv., LLC v. RPost Int'l Ltd.</u>, 206 F.R.D. 367, 368 (S.D.N.Y. 2002); <u>see also</u> Fed. R. Civ. P. 26(c).  Here, there is good cause to stay discovery pending the resolution of Defendants' motion to dismiss.

First, as set forth above, Defendants' motion to dismiss is potentially dispositive and rests on substantial grounds.  The Court need not predict the outcome of the motion to dismiss to justify a stay.  See id.  It is enough if the Defendants have "substantial arguments for dismissal."  See id. (granting motion to stay where motion to dismiss was potentially dispositive and defendant had substantial arguments for dismissal); Gandler v. Nazarov, No. 94 CIV. 2272, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (same); Niv v. Hilton Hotels Corp., No. 06 CIV. 7839, 2007 WL 510113, at *1 (S.D.N.Y. Feb. 15, 2007) (same).  Because Defendants' motion to dismiss is based on substantive arguments and is potentially dispositive (both entirely, and with respect to specific parties), a stay of discovery pending the resolution of the motion is appropriate.  See id.

Second, a stay of discovery is appropriate to "avoid the need for costly and time-consuming discovery."  Id.  Even assuming a portion of Plaintiff's claims survive (and they should not), a short delay does not outweigh the prejudice in requiring Defendants to spend substantial amounts of time and money defending the litigation when it may be disposed of entirely or significantly narrowed.  Rivera v. Heyman, No. 96 Civ. 4489, 1997 WL 86394 (S.D.N.Y. Feb. 27, 1997) (granting motion to stay where disposition of the dismissal motion may significantly narrow, if not eliminate, the issues remaining in the case); see also Niv, 2007 WL 510113, at *2 (S.D.N.Y. Feb. 15, 2007) (granting motion to stay where "responding to the discovery request will likely prove burdensome, and if the [case is dismissed], this burden will likely have served little purpose.").

Finally, Plaintiff will suffer no undue prejudice with regard to a stay.  Indeed, Plaintiff waited nearly two years after his termination to file the action and has not propounded any discovery requests to date.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion in its entirety.

Dated: July 12, 2021
      New York, New York                Respectfully submitted,

                                           KASOWITZ BENSON TORRES LLP

                                           By: */s/Mark W. Lerner*
                                              Mark W. Lerner
                                            (mlerner@kasowitz.com)
                                              Joshua D. Fulop
                                              (jfulop@kasowitz.com)

                                           1633 Broadway
                                         New York, New York 10019
                                         Tel.:   (212) 506-1700
                                         Fax:   (212) 506-1800

                                         *Attorneys for Defendants Quinn, Emanuel,*
                                         *Urquhart & Sullivan, LLP, Peter Calamari,*
                                         *and David Eskanos*